**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORTHERN ILLINOIS TELECOM, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12 C 2372 |
| PNC BANK, NA, as successor in interest to National City Bank, as successor in interest to MidAmerica Bank, FSB, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Defendant, PNC Bank, NA ("PNC Bank"), moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the court grants the motion.

**BACKGROUND**

Plaintiff, Northern Illinois Telecom, Inc. ("NITEL"), brings this action against PNC Bank for breach of contract. PNC Bank is the successor-in-interest to National City Bank ("National City"), which in turn was the successor-in-interest to MidAmerica Bank, FSB ("MidAmerica").

NITEL is a company that designs and installs data and telephone wiring systems. It alleges that in 2007, it "entered into agreements with National City Bank and Mid-America Bank to install data and telephone cabling" at four bank branches in the

Chicago area.[1]  (Verified Compl. ¶ 4.)  According to the complaint,
NITEL completed the work, and at each branch, a representative of
National City or MidAmerica "signed off on the Work Order
acknowledging that all of the work had been completed to their
[sic] satisfaction."  (Id. ¶ 6.)  NITEL then issued four separate
invoices for the work performed at each branch (to whom it issued
the invoices is discussed below; the copies attached to the
complaint are directed to National City and MidAmerica).

NITEL alleges that National City and MidAmerica then
"defaulted on their obligations under the agreement by failing to
pay NITEL for the work that it completed at those four locations."
(Id. ¶ 9.)  NITEL claims that PNC, as the banks' successor, is
"solely responsible for the obligations of those entities."  (Id.
¶ 10.)  In its prayer for relief, NITEL seeks $81,300.00 in
damages, "plus late fees, attorney's fees, [and] court costs."

PNC Bank asserts that it never entered into an agreement with
NITEL, that NITEL was acting as a subcontractor for an entity
called Nexxtworks, Inc., and that any money owed to NITEL is owed
by Nexxtworks.  (Answer ¶¶ 13-14.)  PNC Bank moves for summary
judgment.

---

[1] The bank branches were located in Burr Ridge, St. Charles, Niles, and
Chicago, Illinois.

**LEGAL STANDARDS**

## A.    Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  See Kvapil v. Chippewa County, Wis., 752 F.3d 708, 712 (7th Cir. 2014).  "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); see also Bunn v. Khoury Enters., Inc., 753 F.3d 676, 682 (7th Cir. 2014).  The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question."  Modrowski v. Pigatto, 712 F.3d 1166, 1167 (7th Cir. 2013).

## B.    Elements of Breach of Contract

The parties do not dispute that Illinois law governs.  "To prevail on a breach of contract claim, a plaintiff must establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and

damages resulting from the breach." <u>Spitz v. Proven Winners N. Am., LLC</u>, --- F.3d ----, 2014 WL 3558030, at *4 (7th Cir. July 21, 2014) (citing <u>Lindy Lu LLC v. Ill. Cent. R.R.</u>, 984 N.E.2d 1171, 1175 (Ill. App. Ct. 2013)). Thus, to survive summary judgment, NITEL must point to sufficient evidence supporting each of these elements. <u>See</u> <u>Spitz</u>, 2014 WL 3558030, at *4 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (holding that a nonmoving party must make a sufficient showing on all essential elements of the case on which it has the burden of proof)).

## C. <u>Northern District of Illinois Local Rule 56.1</u>

"For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." <u>Sojka v. Bovis Lend Lease, Inc.</u>, 686 F.3d 394, 398 (7th Cir. 2012).

Under Rule 56.1, the moving party must file a statement of material facts as to which it contends there is no genuine issue. Each paragraph of the statement must contain specific references to supporting materials in the record that are relied upon to support the facts set forth in that paragraph. N.D. Ill. L.R. 56.1(a). The opposing party must file a response to each paragraph of the moving party's statement that includes, "in the case of any

disagreement," specific references to the supporting materials relied upon to support the disagreement. N.D. Ill. L. R. 56.1(b). District courts may rigorously enforce compliance with Rule 56.1. See, e.g., Stevo v. Frasor, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings").

PNC Bank has filed a proper Rule 56.1 statement. It supports the facts set forth therein with specific references to the affidavits, deposition testimony, and documents that are attached to the statement. NITEL's response, however, patently fails to comply with Rule 56.1. NITEL states several times that it "disagrees" with defendant's statements and in other instances claims insufficient knowledge (even where it appears that the matter would be within its knowledge), but it fails to cite any evidence whatsoever in support of its responses. Therefore, the court deems admitted all of the facts set forth in PNC Bank's Rule 56.1 statement. See Cracco v. Vitran Express, Inc., 559 F.3d 625, 632-33 (7th Cir. 2009).

NITEL's failure to comply with Local Rule 56.1 does not result in an automatic grant of summary judgment in favor of PNC Bank. The court still must evaluate all facts in the light most favorable

to NITEL, the nonmoving party, and consider whether the facts demonstrate that PNC Bank is entitled to summary judgment. See Fed. R. Civ. P. 56(e)(2); Keeton v. Morningstar, Inc., 667 F.3d 877, 884 (7th Cir. 2012). With these standards in mind, the court turns to the relevant facts of this case.

## FACTS

In 2007, National City was in the process of acquiring MidAmerica. (Def.'s L.R. 56.1 Statement of Material Facts ¶ 5.) Ultimately, on February 9, 2008, the two banks merged into a single entity, National City. (Id.) In order to transition the MidAmerica system into the National City system, National City entered into an agreement in 2007 with an entity called Nexxtworks, Inc. ("Nexxtworks") to perform data and telephone cabling work at a number of bank branches, including the four branches at issue in this case (the "Branches"). (Id. ¶ 6.)

In May 2007, Nexxtworks entered into a written subcontract with NITEL for NITEL to perform data and telephone cabling work at various locations, including the Branches. (Id. ¶ 7.) The subcontract was in effect at all times during which NITEL performed work at the Branches. Nexxtworks never directed NITEL to enter into a contract or separate agreement with the banks for any part of the cabling work. Moreover, Nexxtworks did not release NITEL from the subcontract with respect to work at the Branches. (Id. ¶ 8; Ex. H, Aff. of Nikki Wills, ¶ 7.) Nexxtworks's Job Requisitions

set forth the scope of the work to be performed by NITEL at the Branches, and NITEL only performed work listed in those Job Requisitions. (Id. ¶ 9.)

Nexxtworks encountered problems with NITEL's performance under the subcontract, which resulted in its having to hire other subcontractors to either redo or finish work that NITEL was to have performed at the Branches. (Id. ¶ 10; Ex. G, Aff. of James Gilliand, ¶¶ 10-11.) On August 22, 2007, Paul Coy, NITEL's sole owner, sent an e-mail to Nexxtworks to apologize for the problems. Coy stated in the e-mail that NITEL would bill Nexxtworks for NITEL's work at the Branches. (Id. ¶¶ 11-12; Ex. I, Tr. of Dep. of Paul Coy, Ex. 13.)

NITEL then submitted invoices to Nexxtworks. (Id. ¶ 13.) The invoices were dated August 22, 2007. (Id. Ex. H, Ex. H-1 (invoices for Burr Ridge, St. Charles, and Niles branches, Invoices ## 3525, 3526, and 3523).) Nexxtworks disputed that it owed NITEL the full amounts invoiced, noting that in one instance, the amount invoiced was $2,000 more than what NITEL had quoted. (Id. ¶ 14.) In addition, Nexxtworks had to pay a third party to complete the work that NITEL had started, so it deducted the amount it had paid the third party from the amounts invoiced. (Id. ¶ 15.) Nexxtworks paid NITEL $4,820.00 for work performed at the Burr Ridge branch, $4,933.00 for work at the St. Charles branch, and $1,970.00 for

work at the Niles branch. (Id. ¶ 15.)[2] Nexxtworks submitted invoices to National City for the work, including the work performed by NITEL, and National City paid Nexxtworks in full. (Id. ¶ 16.)

In September 2008, a collection agency contacted Nexxtworks on behalf of NITEL to seek additional payment for NITEL's work at the Branches. (Id. ¶ 18.) Nexxtworks responded by letter, informing the collection agency about its dispute with NITEL and explaining why it did not believe that it owed NITEL the full amount that NITEL had billed. (Id. ¶¶ 19-20; Ex. H, Ex. H-3.) Nexxtworks also stated that the invoices that the collection agency had sent it differed from the original invoices Nexxtworks had received from NITEL; the new invoices were "billed to National City Bank" and "approximately 40% higher than what Nexxtworks was charged for the same work." (Id. Ex. H, Ex. H-3.) Nexxtworks and NITEL tried to resolve their dispute, but settlement discussions ultimately fell apart. (Id. ¶ 21.)

On October 23, 2009, Nexxtworks filed a Chapter 11 bankruptcy petition and included the disputed NITEL claim in the petition. (Id. ¶ 22.) On February 16, 2010, Coy filed NITEL's proof of claim in the bankruptcy, seeking $115,394.65 and attaching Invoices ## 4264, 4267, 4263, and 4266, which listed National City Bank and

---

[2] It appears that (at least as of September 18, 2008) Nexxtworks did not pay NITEL for work performed at the Chicago branch. (Id. Ex. H, Ex. H-3.)

MidAmerica as the "bill to" entities instead of Nexxtworks. (Id. ¶ 23; Ex. L.) Nexxtworks objected to NITEL's proof of claim on the ground that NITEL filed it after the final claims bar date. The bankruptcy court sustained the objection and disallowed NITEL's claim. (Id. ¶ 25; Ex. N.)

On February 22, 2012, NITEL filed the instant complaint against PNC Bank, alleging that NITEL had "agreements" with National City and MidAmerica for the installation of cabling. (Verified Compl. ¶ 4.) The complaint also alleges that at each branch, a bank representative "signed off on" a work order "acknowledging that all of the work had been completed to" his or her satisfaction and that thereby, "the Bank agreed to make full payment for all completed work within fifteen days of the signed Work Order." Copies of the work orders are attached to the complaint, along with copies of Invoices ## 4264, 4267, 4263, and 4266. (Id. ¶ 6, Exs. A-D.)

Nexxtworks's Job Requisition forms issued to NITEL described, for each branch, the scope of the work to be performed, along with details about the job location, such as each branch's contact person. On the forms, the contacts at each branch were listed as Kathleen Petzold (Burr Ridge); Debra Peterson (St. Charles); Beata Lynch (Niles); and Alay Zaidi (Chicago). (Def.'s L.R. 56.1 Statement of Material Facts Ex. G, Ex. G-2.) These individuals were the branch managers of each branch; they purportedly signed

the work orders attached to NITEL's complaint.  PNC Bank, however, has submitted affidavits from each of the branch managers in which each states that the signature that appears on the work order is not his or her signature.  They also deny signing their respective work order and deny authorizing anyone else to sign his or her name on the order.  Each manager further states that he or she did not have any authority to enter into contracts on behalf of MidAmerica, National City, or PNC Bank. (Id. Exs. O, P, Q & R, Affs. of Kathleen Petzold, Debra Peterson, Beata Mikita-Glenn, and Alay Zaidi.)  Mikita-Glenn states that she legally changed her name from Beata Lynch to Beata Mikita-Glenn in 2005, has been using the surname Mikita-Glenn exclusively since that time, and that at the time the work order was supposedly executed, she would not have signed her name as Beata Lynch.  (Id. Ex. Q, ¶¶ 3, 8.)

## **ANALYSIS**

PNC Bank contends that it is entitled to summary judgment because no written or oral contract existed between NITEL and any of the banks, and the only agreement that NITEL had with any entity related to the cabling work was with Nexxtworks.  It maintains that the branch managers' signatures on the work orders are forgeries and that "NITEL has pursued its claims improperly against PNC[,] presenting forged documents to PNC and this Court in an effort to obtain money which it is not owed."  (Def.'s Mem. in Supp. of Mot.

at 10.)[3]    In defendant's view, "NITEL is seeking to foist its
claim (whether valid or not) against Nexxtworks onto National City
[and thus PNC Bank] simply because NITEL slept on its rights with
respect to the Nexxtworks bankruptcy and can no longer recover
anything from Nexxtworks."  (Id. at 12.)

    In response, NITEL presents no evidence, yet it contends that
"[c]learly, MidAmerica and National City did enter into contracts
for the work performed by NITEL" and that the "existence of any
contract that National City may have had with Nexxtworks does not
disprove that any other contract may have existed with other
service providers."  (Pl.'s Resp. at 2.)    NITEL asserts that
"Nexxtworks owed NITEL money from work done separate from that owed
by National City," so it was "proper for NITEL to file its claim
against Nexxtworks in bankruptcy court and it was proper for NITEL
to proceed independently on its own separate contract with National
City."  (Id. at 4.)  Curiously, NITEL discusses and attempts to
distinguish the case law cited by PNC Bank, but does not describe
the facts of this case more specifically than the vague assertion
that "NITEL is alleging a contract with PNC."  (Id. at 5.)

    In support of its argument that the court should deny PNC
Bank's motion, NITEL relies solely on one item of evidence: Coy's
alleged deposition testimony "that he had a contract with National

---

[3] PNC Bank also indicates that it might seek sanctions under Rule 11.
(Def.'s Mem. in Supp. of Mot. at 10.)

City." (Id. at 7.)  NITEL does not even bother to provide a
citation to this testimony, likely because Coy's testimony does not
constitute competent evidence in rebuttal.  When Coy was asked
whether NITEL had a written contract for the work to be performed
at each branch, he admitted, "Other than a work order, no."
(Def.'s L.R. 56.1 Statement of Material Facts, Ex. I, Tr. of Dep.
of Paul Coy, at 18-19, 37.)  In its brief, NITEL disavows any
reliance on the work orders.  (Pl.'s Resp. at 7.)  It does not
provide any evidence to contradict the branch managers' statements
that the signatures on the work orders are not genuine, that they
did not authorize anyone to sign the work orders on their behalf,
or that they were not authorized to enter into contracts on behalf
of the banks.

NITEL insists that it had a contract with National City, yet
it fails to describe that contract or provide any evidence of it,
be it written or oral.  NITEL also includes a reference to implied-
in-fact contracts without explaining whether it even contends that
one existed here.  In any event, it offers no evidence of one.

NITEL repeatedly faults PNC Bank's motion as illogical and
resting on a faulty premise while failing to recognize its own
burden on summary judgment.  A party that does not bear the burden
of persuasion, like PNC Bank, may move for summary judgment by
"'showing'--that is, pointing out to the district court--that there
is an absence of evidence to support the nonmoving party's case."

See <u>Modrowski</u>, 712 F.3d at 1167 (citing <u>Celotex</u>, 477 U.S. at 325). A nonmoving party cannot rest on mere allegations or denials to overcome a summary judgment motion; instead, it must present "definite, competent evidence in rebuttal." <u>Jones v. City of Elkhart, Ind.</u>, 737 F.3d 1107, 1113 (7th Cir. 2013). The Court of Appeals often calls summary judgment the "put up or shut up" moment in litigation, by which it means "that the non-moving party is required to marshal and present the court with the evidence she contends will prove her case." <u>Goodman v. Nat'l Sec. Agency, Inc.</u>, 621 F.3d 651, 654 (7th Cir. 2010); <u>see also</u> <u>Modrowski</u>, 712 F.3d at 1168-69. The evidence must be that on which a reasonable jury could rely. <u>Goodman</u>, 621 F.3d at 654. If, after an adequate opportunity for discovery, "the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court <u>must</u> enter summary judgment against her." <u>Modrowski</u>, 712 F.3d at 1167.

PNC Bank has met its burden on summary judgment by showing the court that there is an absence of evidence to support NITEL's claim for breach of contract. In response, NITEL has failed to submit any evidence that a contract existed between NITEL and PNC Bank's predecessors. Coy's conclusory allegations that there was a contract are insufficient to withstand summary judgment because they are not supported by the record. Because no genuine issue of

material fact exists, PNC Bank is entitled to summary judgment in its favor.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [44] is granted.


DATE:        August 27, 2014


ENTER:       _____
             Amy J. St. Eve, United States District Judge